IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUCILE SALTER PACKARD CHILDREN'S
HOSPITAL AT STANFORD, a California
nonprofit corporation,

    Plaintiff,

  v.

IDAHO AGC SELF-FUNDED BENEFIT
TRUST, a voluntary employees benefit
association pursuant to 26 U.S.C. § 501(c)(9),
and DOES 1–25, inclusive,

    Defendants.

No. C 18-04927 WHA

**ORDER RE MOTION
TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

## INTRODUCTION

In this action for breach of contract and *quantum meruit*, defendant moves to dismiss for lack of personal jurisdiction. For the following reasons, the motion is **GRANTED**.

## STATEMENT

Defendant Idaho AGC Self-Funded Benefit Trust, a health insurance plan, offered health benefits to employees of an Idaho corporation. Plaintiff Lucile Salter Packard Children's Hospital at Stanford operated (and still does) in California. Plaintiff and non-party Blue Cross and Blue Shield Association ("BCBSA") entered into a "Blue Cross and Blue Shield National Transplant Network Agreement." Under that agreement, plaintiff agreed to render medical care to the program's enrollees in exchange for negotiated rates. As alleged in the complaint,

defendant entered into a separate agreement with BCBSA to gain access to the National Transplant Network Agreement's rates (Compl. ¶¶ 1–9).

Patient "TT," a resident of Idaho and an enrollee in defendant's health-care plan, sought a heart transplant at plaintiff's hospital in California. In September 2014, eight months prior to the transplant, the administrator of the defendant's health plan, Blue Cross of Idaho ("BCI"), allegedly "coordinated" with plaintiff regarding TT's care. Specifically, after admitting TT to the hospital in April 2015, plaintiff notified BCI of TT's admission and BCI responded with an authorization number. Plaintiff then treated TT for over a month, resulting in a bill of $2.5 million. After plaintiff billed defendant for this full amount, plaintiff and BCI agreed that defendant would pay approximately $1.8 million for TT's care, which price reflected the negotiated rates under the National Transplant Network Agreement. Despite the agreed upon rates, defendant paid plaintiff only $677,196 (Compl. ¶¶ 10–21).

In July 2018, plaintiff filed the instant complaint for breach of contract and *quantum meruit* in state court. Defendant later removed the action to this district and moved to dismiss for lack of personal jurisdiction. Following full briefing and oral argument, an order permitted plaintiff to take jurisdictional discovery. The parties thereafter filed supplemental briefing (Dkt. Nos. 1, 7, 34–35). This order accordingly follows full briefing and oral argument.[1]

**ANALYSIS**

Personal jurisdiction can be either general or specific. General jurisdiction refers to the authority of the court to exercise jurisdiction even where the cause of action is unrelated to the defendant's contacts with the forum. Specific jurisdiction, by contrast, exists when a suit arises out of or is related to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). Plaintiff claims only specific jurisdiction in this case.

---

[1] Despite being permitted to do so, plaintiff failed to take any depositions or propound interrogatories. Plaintiff instead supplements the record with items it received "in an informal exchange of documents" (Dkt. No. 34 at 2). Plaintiff's claim that it has been stonewalled in discovery is highly suspect. Had it brought the purported stonewalling to the Court's attention, any discovery disputes would have been promptly resolved.

2

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. Three requirements must be met: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which "arises out of or relates to" the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Here, plaintiff fails to meet the first requirement.

At all relevant times, defendant had its principal place of business in Idaho. Defendant lacked any employees, assets, or property in California. Nor had defendant ever negotiated or executed a contract in California. Plaintiff instead alleges the following contacts: (a) BCI authorized TT's heart transplant in California, (b) after TT's transplant, BCI issued a written approval for the payment of nearly $1.8 million for TT's treatment, and (c) defendant ultimately paid a portion of the claim to plaintiff in California. Although most of these contacts involve BCI, not defendant, plaintiff argues that BCI acted as defendant's agent. Defendant disputes this factual assertion. Nevertheless, even assuming BCI's contacts *could* be imputed to defendant for purposes of personal jurisdiction, such contacts would not give rise to personal jurisdiction in this State.

Our court of appeals' decision in *Hunt v. Erie Insurance Group*, 728 F.2d 1244 (9th Cir. 1984), is instructive. There, the appellate court held that paying a portion of the plaintiff's insurance claim and communicating with the plaintiff in California did not establish personal jurisdiction over the defendant insurance company. The plaintiff in *Hunt* was a passenger in a car accident in Colorado where she was subsequently hospitalized. After she made a claim as a third-party beneficiary under the driver's insurance policy (issued by the defendant-insurer to a Pennsylvania resident), a dispute arose as to coverage. The plaintiff could not afford treatment

3

in Colorado so her mother transferred her to a facility in California. Our court of appeals rejected the plaintiff's argument that the defendant-insurer had "purposefully availed" itself of the privilege of conducting business in California by mailing payments under the policy to this State (i*d.* at 1248) (internal citation and quotation marks omitted):

> We cannot agree that the requisite minimum contacts are established because a plaintiff's move into a state requires the defendant to send communications into that forum. . . . The mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The mere fact that Erie communicated with Hunt in the state, and may have committed a tort in the exchange of correspondence, does not show that Erie purposefully availed itself of the privilege of conducting business in California. Hunt's move to California forced Erie to send mail to that State concerning her claim.

Similarly, in *Davis v. American Family Mutual Insurance Company*, 861 F.2d 1159 (9th Cir. 1988), the plaintiff (a resident of Montana) was injured in North Dakota by a North Dakota resident. The plaintiff sued the North Dakota resident's insurance company to pay a judgment obtained against the insured. Our court of appeals held that the district court in Montana lacked personal jurisdiction over the defendant where the defendant's communications regarding the plaintiff's insurance claim "resulted solely from the fact that [the plaintiff] returned to his home in Montana after the accident in the state of North Dakota." *Ibid.* Because the defendant's "activities in Montana were conducted for the sole purpose of fulfilling its obligation to adjust [the plaintiff's] claim pursuant to its insurance contract with" a North Dakota resident, personal jurisdiction was lacking. *Id.* at 1160–62.

Finally, in *Berg v. Blue Cross & Blue Shield of Utica-Watertown, Inc.*, No. C 93-2752, 1993 WL 467859 (N.D. Cal. Nov. 2, 1993) (Judge D. Lowell Jensen), the district court granted a motion to dismiss for lack of personal jurisdiction based on facts remarkably similar to those presented here. The defendant, a New York insurer, authorized the plaintiff-insured's care in California and partially paid the plaintiff's medical bills. Following *Hunt*, Judge Jensen rejected the plaintiff's argument that the defendant-insurer's communications with and payments to the medical provider in California constituted purposeful availment, explaining that the defendant-insurer had merely responded to actions taken by the plaintiff and the medical provider. *Id.* at *2–3.

4

1    So too here.  Defendant's health-care plan was designed to benefit an Idaho resident
employed by an Idaho company.  Defendant's contacts with California only resulted from TT's
"unilateral activity" in traveling to plaintiff's California hospital to obtain treatment.  Under the
above authorities, sending payments and other communications to California as a result of
plaintiff's unilateral decision to seek treatment does not amount to defendant having
"purposefully availed" itself of the privilege of conducting business here.  Plaintiff fails to
adequately address, let alone distinguish, these decisions.

   The documents submitted by plaintiff after discovery do not demonstrate personal
jurisdictional.  Plaintiff submits, for example, the agreement between defendant and BCI
wherein BCI agreed to provide defendant with administrative services.  Also included are
communications between plaintiff and BCI regarding authorization requests and payments
pursuant to the plan.  The facts of this case therefore remain squarely within the province of
*Hunt*, *Davis*, and *Berg*.  Although plaintiff argues that defendant "arrange[d] for" and
"direct[ed]" TT's medical services at plaintiff's hospital, plaintiff's documents demonstrate
otherwise.  According to the declaration of Rebecca Sullivan, plaintiff's employee, it was a
third-party hospital that contact plaintiff to obtain medical services for TT (Dkt. No. 34-3 ¶ 8).
Moreover, plaintiff's speculation that TT's claim "probably would not be processed without
being flagged by [defendant]," and that it can "be reasonably inferred that [defendant] made the
final decision to allow the plan benefits and payment to [plaintiff]" are unsupported by the
record.  If true, these facts could have been developed during jurisdictional discovery.  Finally,
even if plaintiff is correct that a printout from BCI's website "establishes that [defendant] had
the ability to reach out to hospitals in California" through BCI (Dkt. No. 34 at 5–6), plaintiff
wholly fails to explain this case "arises out of or relates to" this purported connection with the
forum.  Defendant's motion to dismiss is accordingly **GRANTED**.  Perhaps anticipating a lack of
jurisdiction, plaintiff summarily moves in its supplemental brief for an order transferring this
case to the District of Idaho.  The request to transfer is **DENIED.**[2]

---

[2] Because consideration of the declarations submitted with plaintiff's opposition brief does not change the outcome of this order, defendant's evidentiary objections are **OVERRULED AS MOOT**.

5

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is **GRANTED**. The Clerk shall **CLOSE THE CASE**.

**IT IS SO ORDERED.**

Dated: March 29, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE